7-4 Christine Morgan v. Town of Lexington et al. Mr. Burke, good morning. Good morning, Your Honor. Thank you for the chance to come before this court. I'm here representing Christine Morgan, who was the mother of a 12-year-old child who was subjected to what we contend was an extensive pattern of fairly unrelenting bullying for a period of months in the Lexington school system. I know you're familiar with the facts, obviously, but this was an ongoing pattern of conduct from October of 2011 through and including the time period when they withdrew him from school in February. If the court, and again, the defendants in this case have attempted to cast this simply as a failure or a situation where there was a failure to prevent or to take steps to deal with or discipline those individuals here. And what I suggest to you is the issue that we're trying to bring here, and I come here fully aware of the fact that a substantive due process claim is extremely difficult to demonstrate. But as the court was just asking the previous attorneys, the difference in this case in which I suggest there is conscious shocking conduct is if you look at the timetable here from October up until the Christmas vacation, there is an escalation not only of the bullying, pulling this child's pants down two or three different times once in front of a girl, the incessant punching, kicking throughout the corridor, but what I suggest to you is happening is that there is an attitude that was taken by the principal because Mrs. Morgan was vigilant. She just happens to love her child and didn't like the fact that he came home crying and was upset every day and challenged the authority of the principal for his failure to do what his bullying policy required him to do. Could I ask you this because this is what is troubling me? My guess is right now as we're sitting here, there is some child being bullied in some school in Massachusetts literally at this point. Sure. And daily there's probably a parent who feels that the school officials have not adequately dealt with the situation. What line are you advocating that we use that would not mean that all of those cases turn into federal constitutional claims in federal courts rather than being handled under state law and state procedures? Well, Judge, obviously, first of all, it is an epidemic, and secondly, the so-called anti-bullying law provides no remedy whatsoever. But that's a problem you should address to the Massachusetts judges. I got that. But, Judge, I didn't mean to cut you off. I'm sorry. And, by the way, can't the Massachusetts Attorney General enforce that statute? I think they could. I don't think it's going to happen. But you're right about that. But what the blue line is and what happens here is during the end of December, there is an exchange of e-mails in which Mrs. Morgan says to the principal, he's afraid to come back to school. He's afraid because he's reported it and there's further retaliation by the same group of kids. And she says that you're not doing your job. You're not following your own policy. And at this juncture, it's what the conscious, in my opinion, the conscious, conscience, shocking conduct. And the proportionality is he uses police authority. He goes under the color of law to send two uniformed police officers to the house because he's trying to force and compel that child to come back into an environment that is demonstrated to be hostile, that is a sexually charged environment where there has been no attempts to remediate it. And if you look at Morrow. They brought him back and then he was assaulted while they were standing there. But as I understand it, that didn't happen. No, there's further bullying, Judge. But not under their watch. They didn't administer it or supervise it. I don't think they have to be. Certainly we're aware of the ongoing bullying. Let me ask you this. Sure. What substantive due process case in our circuit for the Supreme Court would you point to that you say yours comes close enough to getting on the other side of the line from a state tort, state violation of law, to actually becoming a constitutional violation? I think, Judge, obviously the law is not static. It does change based upon circumstances. And although there is no specific case on point, in point of fact, I know the Hassenfuss case, for instance. It was ruled against the fact that just having in loco parentis was not sufficient in and of itself to mandate an affirmative action on the part of the school. But when the school takes under the color of law to send police officers to there, it then is doing something that under moral is a compulsory control over it that distinguishes just simply the normal in loco parentis argument. And that's what takes this case beyond the normal failure to act. Isn't there a background obligation under the state law to be in school at that age anyway? Sure they do, Judge. Most circuit courts have ruled that the in loco parentis, the mandatory compulsory attendance, does not in and of itself create an affirmative obligation on the part of the school to prevent harm to the child. It's only when there are circumstances that there is an increased or some action, some affirmative action on the part of the school itself that changes the dynamic. And here, by sending the police there, they didn't go there for the purpose of interviewing the child to bring criminal charges. What's the allegation about they were there to force the child to come back? Is that the allegation? Yeah. Or is it just that they appeared? No, no. They were sent there by Flynn. No, no, no. That's not what I asked. I'm sorry. I forget. And the complaint is the allegation that they were there to threaten the child. Intimidate and threaten in the temporal proximity, Your Honor. It's Christmas vacation. The mother is outraged. The child was thrown into the locker. His watch was broken. She has a – it's certainly a verbal exchange with the principal. They go on vacation. They come back. She calls and says he's not going to come back until there's something done. But just so I understand, the chargeable conduct on the due process violation, you say it follows only from the moment the police show up? Well, they actually just became there twice. Yeah. Two different times and each time. The first time or the second time going forward? Both times. No, I'm trying to understand what your argument is so I can, in my head, figure out what allegations am I supposed to credit. As I understand what you're saying now, the government has a special obligation triggered because they went so far as to actually say to the child, you're going to be in trouble if you don't come back to the school. Yes, Your Honor. Okay. What allegations of the peer-on-peer harassment or bullying occur following the visit? One of the things that was ongoing, Judge, was the Facebook page, I Hate R. Morgan, that was liked by students outside the school. Were there physical things done to the child? Yes, Judge. There was additional situations. I think at least once his lunch was thrown down in the cafeteria. The verbal taunts continued.  I want to be fair with this in terms, I think that did the actual sexually charged component of it occurs before that. But if you just look at the two instances, Your Honor, in terms of him sending the police twice, they come in response to her first email. She calls after they arrive and says, you've done nothing, there's no safety plan put in place here. And as a consequence, he sends them a second time. And, Judge, think about this. Having a child's pants pulled down in front of another girl, that, in effect, is potential criminal conduct. An indecent A and B on a child under the age of 14. The police weren't even notified before they went there that the child was in fear of bullying. They went there as a tool, a vehicle, to intimidate the child because of what the mother did,  I suggest that's what takes it beyond just the norm here. Where's the allegation that they were sent to intimidate the child? It's in our complaint. I'm looking. It said the principal sent two police officers to R.M.'s home. Period. I believe we have. It says R.M. viewed this act to be a threat. Correct. The child viewed it to be a threat. It doesn't say that. I think if you even, Your Honor, I think if you even look at Judge Casper's decision, who I respect tremendously, she even concluded that it constituted, it could have been argued legitimately that it was a threat. They didn't interview him for a purpose of taking a police report. They didn't interview him for the therapeutic purpose of saying, hey, kid, come on, back to school, don't worry about it, it's going to be safe. They went there twice to intimidate him for the purpose of threatening him and to silence his mother from complaining. I'm not following the allegation. So is it that they came to get the child to come back to the school? I don't understand. Now you're saying that what they actually came to do was to suggest what, that the mother would get in legal trouble if she kept this up? Certainly, Judge. The truancy law is certainly one of the potential issues that she could be facing for the failure refusal to have a child come back. Yeah, but that's to come back. That's not to get her to stop making the allegations. Just help me figure out what's the logic. Maybe I'm extrapolating. What's the extrapolation? I suggest having two police officers in uniform come to your house, knocking on the door without any notification beforehand is overreaching, that it's designed and purposeful, that it's retaliatory, and it's designed, its intent is one of intimidation of those who are speaking out, and his mother was doing just that. I don't think that's an unfair inference. So you're making a First Amendment claim? Well, I didn't put that in the – But that's – Okay, but it's still embodied within the right to go to school and to attend school, and there's the personal integrity argument, whether it's First Amendment or not. But you say there's no case on point that helped you. What's your next – is there some other case that you would have us grab Well, I think – Judge, we also filed a motion to amend the complaint, to add a Title IX count. But not a First Amendment count? No. Okay. No, but give me a chance, I'll go back and – If you can think of a case that will help in response to Judge Kayada's question, file a 28-J letter with us, give us the citation, and copy your opinion. Thank you. Okay. Thank you, Judge. Good morning, may it please the Court. I'm John Clardy on behalf of the Town of Lexington and Superintendent Ash and Principal Flynn. We see this case as a failure to prevent bullying and or failure to respond to bullying complaints. We don't see this as a police misconduct case or anything to do with the police as pled in the complaint. There's basically two issues here before this Court, as we see a substitute process and a Title IX claim that arises from the reported failure to prevent or respond to bullying. And we think that both of those claims are not actionable based on the facts alleged in the complaint. Just to speak briefly to my brother's allegations about the police intent, my reading of the complaint, of course, this is just a 12B6 stage, so I think the facts would be markedly different than that's been argued here today. But my reading of the complaint was just, as Judge Kayada suggested, these two officers were sent to check on a child who was not appearing in school just as they would with any other truant child. It's part of their obligations as a student resource officer. They were student resource officers. They were sent. And there's no other allegations in the complaint that there was any intimidating conduct by those officers upon appearing at the child's home. As to the actual counts in the complaint themselves, the substitute process claim, we just don't see it. There's actually nothing here in the complaint that rises to the level of extreme. Why is that? Is that because you don't think that the conduct, the bullying, was sufficiently brutal? In other words, if the bullying was worse, might it then rise to it? Or are you saying it can never – bullying just can never create a substantive due process problem when the school does not itself do physical harm to the child? Well, I think the U.S. Supreme Court has already spoken to this to a certain extent in the DeShaney case, whether it's, you know, failure – DeShaney is not a case in which the government has responsibility over the children for the course of the school day. Right, but there's been no cases ever that have found that. I understand that. I'm asking what Lexington's argument is. Is the reason you'd like us to rule that there's not a substantive due process problem here because the nature of the bulleting was not sufficiently brutal? Or is your argument it doesn't matter how brutal we think it was, there can never be a substantive due process problem? We're not arguing the latter, Your Honor. Okay. I'm certain that we could in some way fabricate some claims that could have arised that would put the school on notice. Let me just figure out why this wasn't enough here. So there's repeated physical and emotional actions taken against the child known to the school, and it's sufficiently severe that the child is kept home from school, which is not the usual case for, I think, up to a period of 100 days, so much so that the city believes it needs to send officers out to find out why the child's not coming to school. So why isn't that enough to make out the kind of severe case of bullying that might rise to the level of conscious shocking behavior if the school doesn't do anything in response? Thank you, Your Honor. Looking in the four corners of the complaint, I think it doesn't suggest that level of severe and pervasive conduct that rose to the level of bullying. Here we have pushing, punching, shoving. Those types of conduct, I think, unfortunately, just aren't out of the ordinary or sufficiently conscious shocking. Well, it's alleged to have been repeated, humiliating, resulting in complaints, and then exacerbated by the lack of responsiveness and, as Judge Barron said, resulted in certainly, we must assume based on this complaint, serious emotional trauma for the child and his parents. So, again, why is that not enough? Well, it doesn't rise to the level of constitutional violation. A constitution is not a substitute for a tort action. Certainly, you know, the conduct may be wrong by these other students that are peers, but it doesn't mean it's a constitutional violation, which we as a school have an obligation to prevent or somehow, forestall or protect the children from private violence. Certainly, as a school, yes, we have to protect our children. But that doesn't mean our failure to do so violates the Constitution. Anyone in Massachusetts enforce the statute, as I understand it, the anti-bullying statute, that the Massachusetts legislature has passed? Yes, Your Honor. How is that enforceable? Yes. Can the Attorney General enforce that against your client? Failure to comply with the prescriptions in the statute, such as not having an anti-bullying plan and that type of thing, yes, I would think that would be enforceable by the Attorney General's office. It specifically sets forth, though, you're not to create a private right of action out of this. In fact, Massachusetts has the Tort Claims Act, which provides a lot of immunities to types of claims like this, such as Section 10J of the Tort Claims Act, which prohibits liability for violent tortious conduct by third parties, not originally caused by the school. So there's a lot of immunities available to the tort law. That doesn't mean the plaintiff's without remedies. They could always sue the bullies, the ones that are doing the misconduct, or go after their parents under the statute that allows strict liability for parental, for parents for intentional torts by their children. So he's not without remedies. They're trying to create a constitutional cause of action that just hasn't been recognized by other courts. I think this Court should look to other courts, like the Third Circuit and the Fifth Circuit, that specifically address whether there is or what circumstances would give rise to substantive due process violation. And I think the courts in other circuits have felt it just doesn't rise to that level. And if you look at those cases and the circumstances there, I think you'll find that this pales by comparison to other cases which have been found not to create a substantive due process violation. I point to the estate of Lance case out of the Fifth Circuit, which we discussed in our brief, and the Morrill case out of the Third Circuit, both of which have far more egregious circumstances of bullying than this case prevents. There's been a lot of district court cases in other jurisdictions that have a lot more egregious circumstances where the children, based on the continual harassment, actually end up committing suicide. And the courts have felt that the failure of the school to respond doesn't rise to the level of conscience-shocking behavior. So I think there's a wealth of case law that has rejected more egregious circumstances. But what do you make of what the counsel on the other side says, which is that some of the conscience-shocking in its nature is a test that's got some room to be responsive to people's attitudes about what is or is not conscience-shocking. And the concerns about bullying and the expectation about what a governmental actor is supposed to do to protect children stop. It surely has changed over the course of the last 50 years, evidenced by the fact that there's now an anti-bullying statute that can be enforced by the AG. So why wouldn't it stand to reason that one's idea of what might be conscience-shocking as to how a school responds to finding out that a child is in severe emotional upset in consequence of repeated physical and emotional harassment, that one's expectation of the due process of how they do something might be different than it was 30 years ago? A couple of things, Your Honor. I don't think the courts should be looking at the subjective reaction of the victim to determine whether it's conscience-shocking or not, because then I think we're going far afield. So I think you have to look at the objective actions that took place. And I think there's a lot more recent cases, the cases I've cited in district courts from other jurisdictions are in 2013, 2014, where there are these more egregious circumstances that were found not to shock the conscience. But I will agree with you that I think conscience-shocking as a standard is somewhat malleable and potentially changing over time. But I don't think even looking at the allegations in this complaint, it rises to a current standard of conscience-shocking behavior based on pushing, punching, kicking, and pulling down pants. I hate to ask this, but it's not clear from the record. Are they pulling down his jeans and he's wearing underwear, or is it they're pulling down his underwear and exposing his genitals? The complaint is silent on this, Judge, but the plaintiff did attach a litany of documents, including the child's own description of the bullying events, which we cited in the appendix. And that description just cites the one pantsing incident where he wasn't exposed. There was no nudity. There was no underwear showing. In fact, his pants were pulled down showing his gym shorts. So he was actually wearing gym shorts under his pants for gym class that day. So there wasn't any exposure at all. So we think the complaint is silent, and if anything the inference should be looked at, be attached to the exhibit. So there wasn't anything that egregious in this case. As to the Title IX claim, it really wasn't argued by my brother here today. I don't think this rises to the level of a Title IX claim. It wasn't based on sex. We cited a wealth of cases what is and what isn't based on sex. Here I think the only thing they could point to would be the pantsing incident, and I don't think that is sufficient to draw all this bullying and the conduct by his fellow students into a Title IX discrimination based on sex. And why not? It's a single incident, one. It's not based on sex. It's not because of the gender. If one thought that it was based on sex, that one incident, you said it's not enough to pull in all the other stuff, and why not? I think you have to look at the totality of the circumstances in the bullying or in any hazing cases that other courts have done. If there's a single isolated gender bias claim, and there's a lot of cases I cited about name-calling based on sexual preference and the homosexual name-calling pejoratives being made. Those cases they look at through the total context. In their schoolyard, the Davis case, the Supreme Court recognized that these schoolyard taunting and that kind of thing are done by children. They don't necessarily have the same level of culpability or intent that an adult would have. So you can't necessarily put into gender-based discrimination intent based on some comments of anti-homosexual nature, say, for example, because that might just be mere teasing or taunting that the kids don't have attached or accompanying anti-gender-based discriminatory intent. Thank you. Thank you both.